And turn to our next case, which is United States v. Lawrence. Let me just ask you a question as you start off. Is this case moot? Let me address that, if I may, Your Honor, because I would argue that what the government just did as of Friday makes my point that this is a situation where they have done exactly again what they did before in the district court. Very shortly before, the opportunity for the district or Your Honors to deal with the issues that I have raised, they have moved him outside of the jurisdiction or the local jurisdiction. And if anything, I would argue this is a classic example. Wait a minute. His custody is over, correct, under the Bureau of Prisons? It is. Right. And so the fact that he's now in ICE custody, what does that have to do with it? The question of his immigration status was involved in this case from the very beginning. And in fact, at the sentencing— And he was trying to get transferred back here to deal with his—not his immigration case, but his regular case. Your Honor, dealing with his immigration case was part and parcel of his interaction from the very beginning. In fact, I addressed it directly at the time of sentence when I asked Judge Rakoff and expressed to him at sentence that what I feared the most, that he would be moved outside the New York City jurisdiction in a situation which turned out to be exactly correct, without ability to get counsel, far away from his family, and without any opportunity to deal with the issues that needed to be dealt with because of the immigration consequences of being moved out of New York City. And so I asked, and the judge entered an order directly saying that I had—would have—there was another co-defendant—an opportunity to test the designation, computation of sentence—let me withdraw that—computation of sentence prior to its imposition. And for the very reasons that we were concerned, that his pastime in New York City, Bronx custody, plus good time calculations, which we were worried about, that we would have 10 days after the permanent computation of sentence to address Judge Rakoff, he, in his order, reserved—he didn't say I would have authority, but at least he would listen to whatever arguments should be done. That was done on the day of sentence. But the principal reason for that was to make sure that it was determined by the BOP whether he'd get credit for the state time, right? It was not—that was a principal purpose. It was not the only purpose. It was the more important purpose. It was extremely important, and it was—but also, as I said at the time, there was an issue whether, one, he would get good time from the beginning of a state sentence, and, two, there was a good time appeal pending in the MCC New York that I was directly involved in and which would have been, in my view, ready for either a habeas petition necessary and to challenge that. And it had to do with the 21 days of good time based on certain allegations. Is any of that relevant now? This is what's relevant, Gerardo. It's the United States of America. And here it is, one business day in which, up until either, I think, September is the first I heard about it, he was due to stay in custody where he was in Moshannon Valley, five hours away from the city, from which his father's never been, until January. And so, exactly the same as what happened, and I would argue, on the day after Labor Day holiday, they move him out and move him somewhere else. I don't know where he is. And his dad doesn't know where he is. He's been released from BOP custody, as Judge Walker pointed out. I mean, this is kind of no good deed goes unpunished with the BOP, right? They release him early, earlier than the December date. It just so happens there's an immigration detainer on him. But that's, are you claiming the BOP did this on purpose? I am saying that, rather than arguing this to be moot, that this is exactly the situation which I believe the capable of repetition, yet evading review, should apply. And I'm suggesting the facts are here. Now, I'm not going to sit here and accuse government officials, but their facts are pretty clear that this issue of removing him from family and counsel was paramount from the day of sentence. When I learned, on the day before, I was in touch with all the BOP officials in the MCC and the MDC. I knew exactly what was going on. And up until the Thursday before Labor Day weekend, I was being told, we think he's going to be designated to cadre in MDC. Perfect. Great. And, basically, he had moved from the MCC to the MDC. We had sent a message. What is the relief you're seeking now? I'm seeking an opportunity to either try to persuade this court or Judge Rakoff to bring him back so he can have counsel and have an opportunity. He is denied due process, Your Honor. Just bring him back, but you're not saying for what purpose? I can tell you exactly what purpose, Your Honor, and that is access to counsel so he can challenge the, what, I don't know his status. This would be a directive to ICE that you're asking for now. Yes, I am, Your Honor. To bring him back to deal with what? Yeah, because all of your activities up to now have had to do with his sentence computation. Absolutely, Your Honor. Well, his sentence is served. I understand that, Your Honor, but what was paramount from the beginning and has been discussed with his father, who has not been able to talk to him. I haven't been able to talk to him because he's been in administrative segregation. He was removed. When he was removed, he was in a high security prison. What was paramount and was discussed frequently was his opportunity to file for relief to withhold deportation pending an argument that he should not be returned under the Convention Against Terrorism, not an unusual request, and permit him to make the argument. I'm not an immigration lawyer, but immigration was a role in this case from inception and was discussed directly with the court. This is what I'm complaining about. Has his immigration case been adjudicated in the agency? I don't know, Your Honor. He could be removed. All I know is approximately every week for the last four weeks, I have requested a legal call with Mr. Lawrence. He doesn't really know. I've asked for paperwork. I've been the CJA criminal defense lawyer from the beginning. Whatever was supposed to happen, and I asked the institution for me at least to have whatever process has been done. The reason I'm arguing capable of evading review is he could be under a deportation order right now. If the argument is, hey, Mac, you're too late. He's no longer a BOP. He could be in Jamaica sometime next week or two weeks. I don't know the answer. I should know the answer, and I'm asking for him to have at least a due process of a counsel to be able to make whatever immigration arguments would be appropriate. So, that's the gist of my case. I would argue, and the mootness ... You've got a couple of minutes of rebuttal you want to ... I do, Your Honor. Fine. Well, we hear from the government then. Ms. Fender. Thank you, Your Honor. May it please the court. Jessica Fender. Your Honors, the district court correctly held that it did not have jurisdiction over the claims for relief that Mr. Lawrence was seeking earlier on, and that was specifically the issue of sentence computation and designation. Those issues had to be raised, if at all, under Section 2241, which was not done, and in any event, his request was moot because he, in fact, received the relief that he was seeking at the time, which was credit for the time served in state custody. And as Your Honors have already noted, as of Friday, this is additionally moot because Mr. Lawrence is no longer in the BOP's custody. So even if this court ... Just the circumstances of his release from BOP custody, had he served his time, is that it? Yes, that's it, Your Honors. That's exactly it. There's nothing, and certainly there's no record of anything nefarious here. He came up with reasons to let him out early that otherwise he would have stayed in for another two months. Exactly so, Your Honor. There's nothing to suggest that, and in fact, as Mr. Mack has recognized, there was some indication that Mr. Lawrence's time was going to be up earlier, well before we appeared before Your Honors today. Does the government know what his status is in immigration at this point? I don't think that that's of record beyond what we put in our letter, Your Honor, but I will say that having inquired at the Bureau of Prisons, we did confirm that Mr. Lawrence was released on Friday and that he was put into immigration custody. That's all we know. That's all you know. You don't know the status of his case in immigration? Correct, Your Honor. Do you know where he is? No, Your Honor. How could Mr. Mack find that out? Your Honor, those are good questions and ones that I think underscore the importance of Mr. Mack engaging appropriately with the administrative exhaustion that he was required to undergo and dealing with the Bureau of Prisons officials before Mr. Lawrence was released to understand how to best go about that, but certainly there's no relief available here. Could you just call the Bureau of Prisons and say, where did you send him, and then tell Mr. Mack that so he knows? I mean, is that an unreasonable request to do it? Certainly not, Your Honor, and I will say that the government, and I think the briefing makes this clear, worked very hard with Mr. Mack to address his concerns and to try to provide information with regard to Mr. Lawrence's status throughout this process. Now, certainly we see that Mr. Mack is not happy with the ultimate outcome there, but Do you know whether he was picked up at the prison when he left or whether they transport him into somewhere? My best understanding, Your Honor, and again, this is not of the record, but based on conversations that I had with the Bureau of Prisons representative on Friday was that he basically gets released directly into ICE custody, that ICE is waiting there for these types of individuals and that they go directly. Do they know where they took him? I did not inquire, Your Honor, and I do not know as I sit here today, but again, happy  Of course, Your Honor. The government is always willing and happy to help facilitate these kinds of conversations, but that said, again, the question before Your Honor is whether there is any relief that Mr. Mack can have before this Court today on behalf of his client, and there just is not. He is no longer in BOP custody. Thank you, Your Honors. Mr. Mack? Yes, Your Honor. So, Mr. Mack, I just want to read to you the conclusion of your brief, your blue brief. The defendant appellant asks, and this should not be charged, don't start his clock yet until after, defendant appellant asks that the district court's memorandum and order be reversed and the case be remanded to the district court with the direction the defendant appellant be produced and permitted with defense counsel's assistance to raise whatever sentencing issues were preserved by the court's August 4th order for the district court's determination. Furthermore, defendant appellant requests that the district court be permitted within its discretion to inquire into the circumstances of Mr. Lawrence's removal, transport, and designation so as to determine whether redesignation would be the recommendation to the BOP of the district court. Now, what in that, what in that that you were requesting remains non-moot for us? Well, to me, what is uncertain. I happen to know from his father last night where he is, and only because he called. Maybe, maybe we can, maybe the assistant year's attorney can be relieved of whatever responsibility he has. I'm going to suggest that, that I not stay silent, but I would say this, that. Can you tell us where he is? He's in a, at least, this is double hearsay, but basically from Mr. Lawrence, he is in a local facility of ICE in Scranton, Pennsylvania. So, and he arrived there sometime Friday. But I must, I have to mention here, this is a situation where on the day before the Labor Day weekend, BOP tells me that the designation decision has been made, and rather than doing what every other inmate that I have had experience with, with such short time, that he is going to be transferred. I immediately call the government, I talk to all the BOP legal officers, I'd say, please hold him, I'm willing to go on Thursday or Friday of that day before Labor Day to argue whatever the situation is. When we finally get, because of Judge Rakoff's situation or his procedures as to motion, he's already been moved out. And I'm suggesting it's exactly the same situation here where they're moving him. Now, if he's in Scranton, I do know this institutional hearing program is extremely well-known in most down in Valley. They don't have counsel. It's done within the institution, and that was one of the very specific things I was trying to avoid, because you cannot get counsel. I have called for counsel. I've tried to get somebody, CJA, where he is. He was held incommunicado for weeks. I'm suggesting this is something that everything I could possibly do in order to give this individual an opportunity to have counsel, whether it's in the sentencing situation, but now in immigration. He is going to be in Jamaica. The argument is, okay, 2241, let's file a habeas. Where do we do that? In Scranton somewhere? What assurance, if any, do we have? I've been trying to get immigration counsel to go to Pennsylvania for three months. We believed at the time that he would still be in BOP custody up until about three weeks ago when all of a sudden it's done. I don't know all of a sudden why his sentence changed. It should have been like June 1. He should have been held in cadre. He should have had his parent or his father available to him and his lawyer, some lawyer, who could help him. Do you know if there's been a final order of removal? I don't. You don't know that? I've been asking for exactly what is the immigration situation. I've been trying to get immigration counsel. They cost the private. There's no public counsel. I've been trying to raise public counsel in the four hour, five hours away for about a month, knowing I'd be in this situation and expecting the government would do exactly what happened. Why did he was due to be released at his permanent date in January 2019 until approximately a four or five weeks ago? What happened? While you're talking here, have you, have you at this point made any effort to contact him in Scranton? No, Your Honor. I just found out last night about close to 11 o'clock. I have no idea where to start, nor does his father. And he is accessed one phone call a day. And he did not have any phone calls at all for months and months because he was in administrative segregation. But my guess is, and forgive me for running on, I know, but I do feel strongly about this subject. He was in administrative segregation. He got one call that was, I could get a legal call into him about every two to three weeks. What I believe, which is to me the height of concern, is that they did change his good time calculation. And they changed it in order to permit him to be released last Friday so they could make the mootness argument today. And that's exactly my cynical view. And this is the second time in this case that the government has arranged on the day before to send him somewhere else, preventing me to see that he got the due process he should be. And I, my argument here is, he is suffering a continued injury. He is being denied counsel. He is, in fact, been moved around in order, now, what is his relief now? A habeas downing grant? Well, we've heard your argument, Mr. President. I am. Sorry to talk behind. That's okay. We'll reserve decision.